# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Shawn P. Durbin,**
**Respondent-Appellant Below, Petitioner**

**vs)  No. 16-1004** (Brooke County 14-D-11)

**Dana L. Durbin,**
**Petitioner-Appellee Below, Respondent**

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Shawn P. Durbin, by counsel David F. Cross, appeals the Circuit Court of Brooke County's October 5, 2016, order denying his petition for appeal from a family court order on equitable distribution and attorney's fees. Respondent Dana L. Durbin, by counsel Robyn Ruttenberg, filed a response in support of the circuit court's order. On appeal, petitioner argues that the lower courts erred in finding that monies received by petitioner for a personal injury claim were marital assets, subjecting the monies received as a result of the personal injury claim to a fifty-fifty division, ordering petitioner to pay a portion of respondent's attorney's fees, and calculating equitable distribution.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 26, 1999, the parties married. No children were born of the marriage. On January 29, 2014, respondent filed a petition for divorce citing irreconcilable differences. On April 15, 2014, the family court entered a temporary order that, among other things, mutually enjoined the disposition of any property. On June 30, 2015, by "Final Divorce Order," the parties were divorced. The issues of equitable distribution and attorney's fees were bifurcated from the divorce, however, and considered at a later date.

On November 24, 2015, the parties appeared before the family court for a hearing on the remaining issues of equitable distribution and respondent's request for attorney's fees. The family court entered its "Final Order Regarding Equitable Distribution and [Respondent's] Prayer for Attorney Fees" on April 6, 2016. As memorialized in that order, the family court found that petitioner sustained a severe workplace injury in September of 2005. The parties retained an attorney to pursue a deliberate intent claim against petitioner's employer. The lawsuit included a loss of consortium claim by respondent. The lawsuit was settled for $350,000. No amounts for any of the included damages, such as pain and suffering, future wages, past wages,

1

or loss of consortium were specified in the settlement. Attorney's fees in the amount of $157,500 and litigation expenses totaling $4,184.74 were deducted from the settlement amount. The parties' attorney retained $53,622.41 and placed it into a client trust account to pay the subrogation claim in favor of petitioner's employer's workers' compensation insurer (the "insurance escrow"). The remaining funds totaling $134,692.85 were disbursed to the parties on December 23, 2009.

Beginning in November of 2014 and continuing through September of 2015, petitioner requested disbursements from the insurance escrow totaling $18,787.68. Respondent did not authorize these distributions. The remaining balance in the insurance escrow was found to be marital property and ordered to be divided equally following release of the insurance lien.

The family court also found that the marital estate was diminished due to petitioner's personal injury, which has prevented him from working since the date of his September of 2005 injury. Petitioner received temporary total disability benefits from September of 2005 through August of 2007, but, aside from the parties' jointly-received settlement in December of 2009, he earned no income to contribute to the marital estate after August of 2007.

The family court also considered respondent's request for attorney's fees. At the time of the hearing, respondent's attorney's fees amounted to $13,691.59. In granting respondent's request, the family court noted that respondent's counsel was forced to single-handedly determine the nature, extent, and value of the marital property due to petitioner's failure to timely appear and file the required financial disclosure. Petitioner failed to answer or appear in the action for more than one year following proper service of process. Although the family court acknowledged that it would be inequitable and unjust to award attorney's fees to respondent due to petitioner's unemployment status, the court found it "equally inequitable and unjust" to deny the request for attorney's fees in light of petitioner's "egregious" conduct. For the additional reason that respondent was the parties' sole source of income for nearly seven years prior to separation and that the attorney's fee owed could be offset against the equitable distribution owed to petitioner, the family court awarded attorney's fees in the amount of $6,500 to respondent. The family court also offset the postseparation medical insurance premiums respondent paid in the amount of $2,616 against the sums she owed to equalize the marital estate.

The parties agreed on the distribution of certain items in the marital estate. The remaining items were distributed by the family court. Ultimately, respondent owed $13,205.66 to petitioner to equalize the marital estate; however, after deducting the $2,616 credit for the medical insurance premiums and $6,500 attorney's fee award, respondent owed $4,089.66 to equalize the estate.

Petitioner appealed the "Final Order Regarding Equitable Distribution and [Respondent's] Prayer for Attorney Fees" to the circuit court on April 21, 2016. Petitioner argued that the family court erred in finding the insurance escrow balance to be marital property, awarding respondent attorney's fees, and calculating the equitable distribution. By order entered on October 5, 2016, the circuit court denied petitioner's petition for appeal, finding that the family court's findings of fact were not clearly erroneous and that its application of law to the facts was not an abuse of discretion. It is from this order that petitioner appeals.

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the circuit court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

On appeal, petitioner advances four arguments: first, he argues that the lower courts erred when they found that the monies placed in insurance escrow were marital assets subject to equal division; second, in the event this Court finds that a portion of petitioner's personal injury settlement proceeds were marital property, the lower courts abused their discretion in awarding fifty percent of the insurance escrow to respondent when she had already received a substantial settlement amount; third, the lower courts erred in awarding respondent a portion of her attorney's fees; and fourth, that errors were made in calculating the parties' equitable distribution.

In arguing that the insurance escrow was not part of the marital estate, petitioner states first that the fact that this portion of the personal injury settlement was placed into an account for the purpose of paying any properly subrogated amounts to the insurance company does not render the funds marital property. Further, petitioner claims that the lower courts erred in concluding that the marital estate was diminished by any medical expenses paid because all medical expenses were either paid upfront or reimbursed by petitioner's employer's workers' compensation carrier. Third, the wage loss suffered by petitioner for the first two years after his workplace injury was covered by workers' compensation payments. Petitioner, therefore, contends that the marital estate was not diminished by wage loss. To the extent any wage loss occurred after this two-year period, it should be characterized as future damages, and the insurance escrow should be considered payment for these future damages and, therefore, exempt for classification as "marital property."

In addressing this first claim, we note that "marital property" is defined as "[a]ll property and earnings acquired by either spouse during a marriage" except for certain statutory exclusions. W.Va. Code § 48-1-233(1). "[D]efining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital[] expresses a marked preference for characterizing the property of the parties to a divorce action as marital property." Syl, Pt. 3, in part, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990). With respect to personal injury awards, we held, in *Hardy v. Hardy*, 186 W.Va. 496, 413 S.E.2d 151 (1991), that, "[t]o the extent that its purpose is to compensate an individual for pain, suffering, disability, disfigurement, or other debilitation of the mind or body, a personal injury award constitutes the separate nonmarital property of an injured spouse." *Id.* at 497, 413 S.E.2d at 152, Syl. Pt. 1. However, "[e]conomic losses, such as past wages and medical expenses, which diminish the marital estate are distributable as marital property when recovered in a personal injury award or settlement." *Id.* at 497, 413 S.E.2d at 152, Syl. Pt. 2. "The burden of proving the purpose of part or all of a personal injury recovery is on the party seeking a nonmarital classification." *Id.* at 497, 413 S.E.2d at 152, Syl. Pt. 3.

3

In this case, petitioner has failed to establish the purpose of any portion of the parties' personal injury award. When the parties received the personal injury settlement, the various potential purposes, including pain and suffering, past wages, future wages, or respondent's loss of consortium claim, were not specifically delineated. Moreover, the family court found that the marital estate had been diminished, but not for the reason petitioner claims. The family court did not find that the marital estate had been diminished by the payment of medical expenses. Rather, it found that the estate was diminished due to petitioner's unemployment from his September of 2005 injury through April 24, 2014, the date the parties separated. Although petitioner received disability benefits for two years, he offers no evidence of the amount of these payments, his wages prior to his injury, or of any attempt to quantify a portion of the settlement that compensates for past wages rather than future lost wages. He also ignores the nearly seven-year period of unemployment between the date of his last disability payment and the date of the parties' separation in arguing that the family court erred in concluding that the marital estate had been diminished. Because petitioner failed to satisfy his burden of proving the purpose of the funds remaining in insurance escrow, the lower courts did not err in classifying the funds as marital property.

Petitioner further argues that, if a portion of the settlement proceeds was marital property, the lower courts abused their discretion in awarding respondent fifty percent of the insurance escrow when she had already received a substantial distribution from the settlement amount.

As set forth above, we find that the lower courts did not err in classifying the escrow account funds as marital property. Additionally, petitioner has failed to argue what percentage would be appropriate, and he ignores respondent's entitlement to funds compensating the estate for petitioner's lost wages. Thus, we find this assignment of error to be without merit.

Petitioner's third assignment of error concerns the award to respondent of a portion of her attorney's fees. Specifically, petitioner contends that the lower courts did not consider the factors set forth in *Arneault v. Arneault*, 216 W.Va. 215, 605 S.E.2d 590 (2004) and that the courts failed to make specific findings addressing the award.

In *Arneault*, we set forth that

> an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

*Id.* at 216, 605 S.E.2d at 591, Syl. Pt. 2, in part (citation omitted.) "We have also recognized that delay caused by a party, and the intransigence of a party in connection with divorce proceedings,

4

may be properly considered as relevant factors in awarding attorney fees[.]" *Landis v. Landis*, 223 W.Va. 325, 328, 674 S.E.2d 186, 189 (2007) (citation omitted).

In awarding respondent a portion of her attorney's fees, the family court noted that respondent had incurred $13,691.59 in legal fees between November of 2013, when respondent first sought legal counsel, and the date of the final hearing. The family court found that respondent's counsel had spent 58.4 hours, which included time on novel questions of proof and law such as subrogation issues, personal injury proceeds as marital or separate property, the improper distribution of escrowed funds, the subrogation lien amount, and whether any funds remaining in the insurance escrow should be characterized as marital or separate property. The family court further found that the issues presented required a high degree of skill and that respondent's counsel was a skilled attorney with over thirty-five years of experience. The family court also found that respondent's legal relationship with her attorney was prolonged by the fact that petitioner failed to answer or appear in the divorce action for more than a year after being served. As a result, respondent's counsel "shouldered the burden of determining the nature, extent, and value of the marital property and debt due[,]" and this effort was compounded by petitioner's failure to file his required financial disclosure. The family court also considered the parties' respective employment situations. Although the family court found that it would be "inequitable and unjust" to award respondent attorney's fees in light of petitioner's unemployment, the court found it would be "equally inequitable and unjust to deny attorney fees" to respondent in light of petitioner's failure to comply with court orders and the Rules of Practice and Procedure for Family Courts. The family court deemed these failures to be "wanton, vexatious, and oppressive," and it, therefore, awarded $6,500 in attorney's fees to respondent, which were offset against the equitable distribution owed to petitioner. In short, we find that the family court did consider the *Arneault* factors along with the factors set forth in *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986) for determining the reasonableness of an attorney's fee.[1] As such, the lower courts did not abuse their discretion in awarding respondent $6,500 for her attorney's fees.

---

[1] In Syllabus Point four of *Pitrolo*, this Court held that

> [w]here attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

176 W.Va. at 191, 342 S.E.2d at 157, at Syl Pt. 4.

Petitioner's final assignment of error is that the lower courts erred in calculating the parties' equitable distribution. Petitioner claims that, first, error resulted from the categorization of the insurance escrow as marital property. Second, the lower courts abused their discretion in awarding to respondent greater sums from the personal injury settlement than were proper, even if there was a diminishment of the marital estate by wage loss. Third, the lower courts erred in reducing the amount respondent owed to petitioner to equalize the distribution by the amount due to respondent for her attorney's fees. Fourth, the lower courts failed to take into consideration the extent to which petitioner contributed to the marital property by monetary contribution, including funds that were his separate property.

In considering this ground, we note, as set forth above, that petitioner has failed to establish that the insurance escrow was incorrectly categorized as marital property and that respondent's attorney's fees were improperly awarded. With respect to petitioner's argument that the lower courts abused their discretion in awarding to respondent greater sums from the personal injury settlement than were proper and failed to consider his monetary contribution to the marital estate, we again note that the settlement did not carve out amounts for specific purposes. Simply, petitioner failed to meet his burden in establishing that any specific amount remained his separate property. Thus, although West Virginia Code § 48-7-103 provides that a court may deviate from the presumption that all marital property is to be divided equally after considering "[t]he extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions,  including, but not limited to: . . . (B) Funds which are separate property[,]" petitioner has failed to establish what amounts, if any, were his separate funds. Petitioner's argument also ignores the nearly seven-year period prior to the parties' separation that he was unemployed, which diminished the estate. For these reasons, we find that the lower courts did not abuse their discretion in calculating equitable distribution.

For the foregoing reasons, the circuit court's October 5, 2016, order denying petitioner's petition for appeal is hereby affirmed.

Affirmed.

**ISSUED:**  October 23, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker